Court calls case number 513-0212, people against Fultz. Counsel, you may proceed. May it please the court, Counselor. My name is Lawrence O'Neill and I represent Cleo Fultz and this cause. This is a direct appeal following the jury trial where Mr. Fultz was found guilty but mentally ill of murder in the shooting death of his roommate Floyd Robinson in August of 2010. I have raised two issues in my brief. I intend to limit my presentation here to argument two. In argument two, I ask this court to reverse Mr. Fultz's conviction and remand the cause for a new trial because it was denied a fair trial by the trial court permitting forensic scientist Thomas Gambo to offer an expert opinion as to whether the firearm would deposit gunshot residue on the hands of the shooter because the state did not disclose Gambo's credentials and conclusions with respect to gunshot residue and the evidence did not establish that Gambo was qualified to offer an expert opinion on the subject of gunshot residue. First, the state failed to disclose Gambo's credentials and conclusions regarding gunshot residue. Six shots were fired during the shooting. At trial, the defense claimed that the evidence did not prove that Mr. Fultz fired the shots that killed Robinson. A central part of that defense involved a lack of gunshot residue on Mr. Fultz's hands which is counsel asserted during opening statement and closing argument suggested that Mr. Fultz was not the shooter. The police placed bags on Mr. Fultz's hands after the shooting to protect any gunshot residue that may have been deposited and Mr. Fultz's hands were then tested for gunshot residue. The defense presented the testimony of Mary Wong, a forensic scientist whose specialty includes trace chemistry and prima gunshot residue analysis. Wong submitted a report regarding gunshot residue in Defendant's Exhibit 2. Wong analyzed the gunshot residue evidence collection kit that had been administered to Mr. Fultz's hands and Wong concluded that Mr. Fultz may not have administered the firearm with either hand and if he did, the Wong's conclusion that Mr. Fultz may not have administered the firearm was a critical part of Mr. Fultz's defense that the state did not prove beyond a reasonable doubt that he was the shooter. Because Wong had submitted a report of her findings, the state knew that Wong would testify that because Mr. Fultz's hands did not have residue, he may not have fired the gun. So the state and Thomas Gambo. At trial, Gambo described his qualifications, training, and experience and stated his specialty was firearm identification, tool mark identification, and footwear identification. He stated that his involvement in this case was limited to firearm identification. The court then certified Gambo as an expert in his field, namely firearms identification. With respect to firearms identification, Gambo testified that he examined the gun and compared them with the bullets in the casings and determined that they had been fired, the bullets in the casings had been fired from that firearm. The prosecutor then shifted from firearm identification and asked Gambo if he could tell the jury about gunshot residue. Defense counsel objected, stating that goes beyond the scope of the findings that were submitted in Mr. Gambo's laboratory report where he was asked to examine the gun and compare the guns and the bullets in the casings. Counsel stated there was no analysis of gunshot residue as it pertains to Mr. Gambo in his laboratory report. The judge found that there was no insufficient foundation and let the prosecutor leeway to establish the foundation and eventually Gambo testified that it is unlikely that the shooter would have residue on his hand because the gunshot residue comes out of the barrel in the direction of the target. Gambo's testimony regarding gunshot residue caught defense counsel off guard and surprised him because the state did not disclose Gambo as an expert in gunshot residue or anything about any statement of his qualifications in this field or his conclusions regarding gunshot residue. Did he not also testify there was a 32 therefore there's not much gunshot residue? He did testify to that your honor that's correct but the important point is that defense counsel did not know that Gambo would offer an opinion regarding gunshot residue discharge from that gun. This was a violation of discovery rule 412-84 and provided the prosecutor with an unfair advantage in trial. Such surprise unfair advantage and inadequate preparation is what the discovery rules are intended to prevent. The question then is whether Mr. Fultz can receive a new trial because of this discovery violation. A defendant is entitled to a new trial when either he or she was surprised and prejudiced by the non-disclosure and the trial court failed to eliminate the prejudice. Did Wong also testify that there's not much gunshot residue on a 32? I don't believe that she stated it that way. How did she state it? She stated that the gun discharges gunshot residue and actually she stated that because of the number of shots fired in this case six or seven and that the fact that the magazine was removed and then reloaded that it was more likely that there would be gunshot residue on the hands of the shooter. But she said also that it could come off in washing your hands time rubbing up against something? That's correct that's correct that's correct your honor and I would suggest that that is a you know that it would be like a determination regarding she testified to that she testified yes that's correct so courts courts look to apply various factors in determining whether a discovery violation prejudiced the defendant thereby requiring a new trial. In this case Mr. Fultz was prejudiced by Gambo's gunshot residue testimony. First it set off it set forth an argument one in which Mr. Fultz argued that the evidence failed to prove him guilty beyond a reasonable doubt. The evidence against Mr. Fultz was closely balanced. No evidence testified that Mr. that they saw Mr. Fultz shoot the gun. No physical evidence such as fingerprints or gunshot residue connected Mr. Fultz to the crime. In fact as stated Wong testified that the gun that that Mr. Fultz may not have fired the gun. So if the evidence was closely balanced for purposes of showing prejudice for a discovery violation. Second the Gambo's gunshot residue testimony was extremely damaging to the defense. As noted the defense counsel claimed that the evidence did not prove beyond a reasonable doubt that Mr. Fultz shot the deceased. A main part of that argument was no gunshot residue on Mr. Fultz's hands which Mary Wong provided support for when she testified that Mr. Fultz may not have fired the gunshot that killed the deceased. The state then used Gambo to rebut Wong where Gambo testified that the model gun may not discharge residue on the shooter's hand. In any event Gambo's testimony undercut Wong's testimony and gave the jury an explanation for the lack of gunshot residue on Mr. Fultz's hands other than that Mr. Fultz did not fire the gun. Thus Gambo's testimony was extremely damaging to the defense. Third there was also the likelihood the prior notice of gun of Gambo's gunshot residue credentials and conclusions would have benefited the defense. This non-disclosure of Gambo's gunshot residue testimony denied defense counsel the opportunity to prepare and to effectively cross-examine Gambo concerning his gunshot residue findings. The only way to effectively cross-examine an expert is to be prepared to challenge the expert's training, testing methods, and conclusions. Defense counsel here could not adequately prepare to cross-examine Gambo if he did not know that Gambo would testify about gunshot residue. That gave the prosecutor an unfair advantage in this case and prejudiced Mr. Fultz and prevented counsel from effectively cross-examining Gambo about his methods of testing. As a matter of fact Gambo did not even test this gun for firearm residue. Again his analysis and examination of the firearm did not include anything about gunshot residue so the defense counsel had no forewarning that Gambo would testify about gunshot residue. Fourth the prosecutor willfully failed to disclose to the defense that it would prevent that it would present Gambo to give an expert opinion regarding gunshot residue. Wrong was listed as a witness and submitted a report out of findings. Thus the state knew that Wong would testify about the lack of gunshot residue on Mr. Fultz's hands and the prosecutor then used Gambo to offer an expert opinion on gunshot residue to counter Wong's testimony. Yet the state did not disclose Gambo's qualification. Thank you your honor. Counsel. Thank you your honor. May it please the court and counsel. Your honors my name is Julia Wyckoff. I am an assistant appellate prosecutor from the fourth district. Your honors defendant today has made the argument that Thomas Gambo was one not disclosed as a witness as an expert witness on the area of gunshot residue and two was not qualified to testify about twice in the in the common law record in this case. On common law record page 97 and 120 Thomas Gambo is listed as a witness for trial. There's been a lot of discussion about discovery and what was in the reports of discovery. As your honors well know on appeal we don't have access to discovery. We don't know what that report said if it said anything about gunshot residue. So how can we know what was in his expert report if there was anything about gunshot residue? What we do know is that Thomas Gambo was specialized in firearms. When the state inquired about gunshot residue the defendant objected and the court sustained that objection noting that there needed to be a proper foundation regarding gunshot residue. The state then inquired into Gambo's experience and training with gunshot residue at which point he did lay a foundation for his experience in testing for gunshot residue. He noted that it's quote an integral part of our job and explained the procedures that he uses to test for gunshot residue. At that point the trial court accepted Gambo as an expert witness in the area of gunshot residue. The court exercised its discretion in forcing the state to lay a foundation for Gambo as an expert in gunshot residue. The state then laid the foundation and the court accepted it. Your honors notably there was no objection following this qualifications regarding gunshot residue by defense counsel. At that point he did not stand up and object and state this man is not qualified to testify about gunshot residue. There was no objection made on that point at trial. Your honors the court did not abuse its discretion in allowing Thomas Gambo to testify about his experience with gunshot residue. He did have qualifications to testify on this matter. Moreover he's a firearms expert and as your honor noted earlier during our opening arguments here today he testified that this kind of weapon simply doesn't hold very much gunshot residue. Your honors moreover the state's position is that they were on notice that there would be testimony about gunshot residue. The defendant was on notice because they had their own expert witness to testify about gunshot residue. Their forensic scientist Dr. Wong she testified that gunshot was not on the defendant's hands. That led to four inferences that the jury could draw the fact that there was not gunshot residue on the defendant's hands. One as defendant has noted multiple times today and in his brief the defendant may not have shot the firearm. However there were three other things which could have happened which Ms. Wong testified to at trial. Second maybe particles were removed by activity in this case. As witnesses testified during the gathered the information that was there at the scene then testified the to the forensics of shell casings that were found that matched the firearm found in the scene. There was at least one hour that went by before defendant's hands were bagged. Any number of things could have happened in that amount of time from defendant's arrest to the time that bags were placed on his hands. He could have washed his hands. He could have wiped his hands on his pants. There was testimony that he was running through the weeds. Perhaps particles were removed by activity during that time. She also testified that the particles maybe there weren't enough to be detected by tests. As Thomas Gamboa testified this kind of firearm simply does not render that much gunshot residue on a shooter because of the type of firearm that it is. There's not much gunshot residue in the firearm at all. So perhaps there just weren't enough particles to be tested. Finally there's also the possibility that particles simply were not deposited. So she testified to four different things that could have happened. Only one of which was the fact that maybe he wasn't the shooter. However your honors based on all the evidence in the case the jury found that the defendant was the shooter based on the sufficient evidence that was placed against him. Your honors the stake intends that not only was this evidence sufficient it was excellent evidence. The defendant an eyewitness himself told law enforcement the first arrivers at the scene that he shot the victim in this case. He was there. He was the shooter. He told them that he shot the victim. He himself offered that testimony to law enforcement when they arrived on the scene. The defendant then told law enforcement that he threw a gun in the weeds. He led officers to that firearm which was then tested positive as a match for the bullets that were found in the deceased's body. Antoine Moore was present at the home during the shooting. He heard gunshots. He was playing video games in the living room of the home. When he heard the gunshots he started walking back towards the bedroom to see of course what had happened when the defendant came running by him and ran right out the door. Moore also testified that the defendant kept a firearm on him at almost all times and that he'd seen the defendant with a firearm that very day. Finally your honors the first responding officer Long she described the defendant as a large black male with a white t-shirt on. Chante Bradford also testified and she testified that when the shooter came into the doorway of the room although she didn't see his face it was very chaotic what was happening of course she knew that the shooter had on a white t-shirt and dark pants consistent with what the defendant was wearing when he approached law enforcement at the scene of this crime. Your honors because this evidence is so and the state contends that he was disclosed as a witness in the area of gunshot residue and that was properly accepted but for hypothetical sake even if he was improperly disclosed or was not disclosed as an expert in gunshot residue the evidence against the defendant was so significant that he was not prejudiced by Thomas Gambo's testimony about gunshot residue. In fact Thomas Gambo testified he did not test for gunshot residue in this case so how could that testimony be so damaging to the defendant if anything it could be helpful to him because this testimony from an expert for the state said I didn't even test this for gunshot residue but this is my experience with gunshot residue testing how can that be prejudicial to him especially considering all of the significant evidence that was facing the defendant in this case. Ms. Wythoff I have a question did I understand you to say that there's no way for us to determine from the record whether or not there was written disclosure of Gambo which would include an opinion about gunshot residue so how is it your position that he was disclosed with respect to that? Right your honor the state's position is that what we do have available on the common law record is we do have witness lists you know which witness we're going to testify trial he's on that witness list. But his opinion as to what he's going opinion he's going to give is not. Right that's yes and that is the state's point I'm sorry if I make that clear in my earlier remarks so potentially what we could have here is a situation where this would be better served being handled in a petition for post-conviction relief where we can get those records we can put the attorneys on the stand and ask those questions was he disclosed as an expert witness in the area of GSR? Was that in his report? Right now based on the record on appeal we don't have the answers that we need to definitively say whether or not that was in his report or not what we have is the witness list and then what inferences we can draw from the way people acted during trial. So the state contends if that is a serious concern that your honors have then that's an issue that would be better served on post-conviction. And do you know why the report is not included in the common law record? Your honor it's always been in my experience and granted I'm still a newer attorney with our office but that you know discovery materials like that are never in our common law records that I've seen what we you know the experts testified at trial and that's the testimony that we rely on we don't usually see those reports within the common law record as those are discovery materials pre-trial. Your honors for these reasons the state contends that not only was this evidence sufficient it was significant the evidence against the defendant. He was convicted by a jury they heard the testimony of all the people that we've been quibbling about today and they made a factual determination that the defendant was guilty but mentally ill at the offense of first degree murder. Unless your honors have any other questions the state asks that you affirm. Thank you. Thank you counsel. Mr. O'Neill. Mr. O'Neill I have a follow-up question to the one I just asked if this is your argument that he was not disclosed with respect to gunshot residue where is the report that would back that up? Your honor the report is not in the record what we have is. Why isn't it? I understand it's discovery but if it supports your position how are we to make that determination? I'm relying on the defense counsel's objection to Gambo's testimony due to non-disclosure and defense counsel stated on the record as part of his objection that the Gambo's testimony about gunshot residue goes beyond the scope of the findings that are contained in his laboratory report and counsel went on to say that Gambo's laboratory report pretend does not at all pertain to gunshot residue. So you're saying essentially he admitted that? That's correct the prosecutor did not object at that point and say oh no it's in it's in the laboratory report so we have it we have in the record via counsel's objection that the laboratory report that Gambo submitted did not include anything about gunshot residue it pertained only to firearm identification. Second, counsel mentioned the fact that Gambo was an expert was shown to be an expert in firearm identification and he was familiar with guns and therefore he could render an opinion about gunshot residue. On the issue of this Mr. O'Neill, Dr. Wong's testimony had included the gun so how is that a surprise? How would Dr. Gambo's testimony then be a surprise when it's consistent with Dr. Wong saying that one of the possibilities was there was no deposit? Well the defense counsel did not know that Gambo would testify that this type of gun did not this would not discharge the deposit residue on the shooter's hand. He did not know that so counsel was unable to you know properly prepare to investigate to quest cross examine Gambo about that particular issue. The defense counsel knew that Wong would testify that there were perhaps other explanations why there was no deposits on the shooter's hands but defense counsel argued that latched on to Wong's testimony that he may not have evidence also shows that he may not have fired. Now that was the reasonable doubt part of the gunshot residue testimony but Gambo's damaging testimony was that that this gun would not deposit residue on the hands of the shooter because the this the gun discharges residue towards the target so that completely undercut Wong even though defense counsel knew that Wong would testify that there were perhaps other explanations why gunshot residue wasn't on the shooter's hands but Gambo's testimony completely undermined the defense's argument that that the gun may not have discharged residue on the shooter's hands on Mr. Folt's hands because he wasn't the shooter. What about the state's argument that he said he was the shooter? Well your honor I suggested the court that that pertains to if that's a factual question that pertains to the reasonable doubt and argument one to determine whether Mr. Folt should be granted a new trial based upon the discovery violation one of the questions is whether the evidence was closely balanced and I suggest to the court that that Mr. Folt's testimony right after the end of the statement right after the incident because it does not officiate the claim that it that the evidence was closely balanced for purposes of determining whether Mr. Folt was prejudiced and should be receiving the trial for the discovery violation moreover Mr. Folt was a mentally mildly mentally very low IQ he was at a mental illness and there was testimony from the the psychiatrist to examine him for fitness that he is easily led he doesn't understand comprehend well he is easily influenced by authority and you know his statement may have been just a result of those things and the testimony from the officers who said that Mr. Folt's made these incriminating statements are somewhat ambiguous the officers testified that Mr. Folt said somebody was shooting and they had a hit out on me and he shot first now perhaps you know Mr. Folt's you know did not speak clearly or the officer did not understand that he meant he's fired first he meant the other he meant the other well that kind of confused me too but I thought there was a follow-up question so they asked you know did you does that mean you shot first or he shot first and he clarified that by saying that I shot first I think that I think the question more was the question was more to the officer when when he said he shot first did he mean Mr. Folt's so I think that that was the Mr. the copy officer's testimony was that did you ask him okay see what I see what you're saying I'll have to reread the record thank you all thank you counsel we'll take this case under advisement and issue a decision in due court thank you